In re Willard: Willard and others, Respondents, vs. State Board of Control and another, Appellants.

*September 13—October 12, 1937.*

For the appellants there was a brief by the *Attorney General,* and oral argument by *L. E. Vaudreuil,* deputy attorney general.

For the respondents there was a brief by *Kading & Kading* of Watertown, and oral argument by *Charles E. Kading.*

WICKHEM, J.  In the view that the court takes of the matter, the sole question here is whether an appeal lies by the State Board of Control to the circuit court for Jefferson county from an order of the juvenile court of that county releasing from the Wisconsin industrial school for girls a delinquent minor theretofore committed to that school by that court.  While, in view of the court's conclusion that an appeal to the circuit court does not lie, we do not reach

the merits of this controversy, it will be necessary, in order to make intelligible the court's conclusions with reference to the right of appeal by the board, incidentally to construe the statutes upon which the merits of the controversy are based and to give a fairly complete history of the litigation.

On May 6, 1935, one Emma Tietz filed a petition setting forth that Dorothy Mae Willard, a child of the age of sixteen, continuously frequented a tavern owned and operated by petitioner and her husband, and that the said Dorothy Mae Willard had had improper relations with petitioner's husband, and is a delinquent child. After a hearing, in which these facts were conclusively established, the county court, acting as juvenile court, committed Dorothy Mae Willard to the Wisconsin industrial school for girls during the period of her minority. Commitment was temporarily suspended, and the child paroled to a Mr. and Mrs. Grady in Watertown. After a short trial, the Gradys declined to continue their custody because of failure on the part of the girl to co-operate with their efforts in her behalf. Thereafter, an order was issued on June 26, 1935, committing Dorothy Mae Willard to the Wisconsin industrial school for girls. The petition for rehearing was filed April 22, 1936, and the order modifying the commitment and placing her in custody of her grandmother was entered on June 26, 1936.

The first question relates to the scope and extent of the juvenile court's jurisdiction to entertain a petition for rehearing in the case of a delinquent minor where there had been a previous hearing and commitment to the Wisconsin industrial school for girls. This involves a consideration of the proper construction to be given to ch. 48, Stats., commonly called the "Children's Code."

Prior to the enactment of this code in 1929, the sole authority to discharge a delinquent juvenile child lawfully committed to the Wisconsin industrial school for girls was

vested in the State Board of Control. Sec. 4970—5, Stats. 1917. In addition, the State Board of Control was given the right to parole any inmate of this school. Sec. 4970—4, Stats. 1917. These sections were amended prior to 1929, but not in such a manner as to change them in substance. It was also provided that commitments to the Wisconsin industrial school for girls were to be for the full period of minority, subject to the power of the board to discharge or parole. Sec. 4969, Stats. 1917. The important changes enacted as a part of the Children's Code and which bear upon the question of jurisdiction are:

Sec. 48.01 (5) (b), which provides:

"Whenever the juvenile court shall determine any child to be delinquent, such child shall continue for the purposes of sections 48.01 to 48.28 under the jurisdiction of the court until he becomes twenty-one years of age, unless discharged prior thereto."

Sec. 48.07 (1) (b), which gives the court power to—

"Commit the child to a suitable public institution or to a suitable child welfare agency licensed by the state board of control and authorized to care for children or to place them in suitable family homes. The terms and durations of such commitments, other than to the industrial school for boys or to the industrial school for girls, shall in each case be fixed by the court, subject to modification by the court on its own motion or otherwise. . . ."

Sec. 48.07 (2a), which provides:

"Upon the discovery of additional evidence which raises a question as to the advisability of the commitment made in any case in any juvenile court, the parent, guardian or next friend of the child so committed may at any time petition the court for a rehearing and if the court deems such rehearing advisable, it may again hear the case and make such disposition thereof as is in the best interests of the child."

In spite of these changes, ch. 48 still expressly provides (sec. 48.15) that all commitments of delinquent children to

any industrial school shall be to the age of twenty-one years or unless paroled in accordance with sec. 48.16 (2) (b), which continues to vest the Board of Control (sec. 48.16 (1)) with the sole authority to discharge a delinquent child lawfully committed to the Wisconsin industrial school for girls. The parole powers of the Board of Control theretofore contained in sec. 4970—4 are retained in the Children's Code (sec. 48.16 (2) (b)), and it is further provided (sec. 48.16 (2) (a)) that the board may restore a child committed to the industrial school for girls to the care of its parents or guardians before the expiration of the term of commitment if in its judgment that is in the best interests of the child. The contention of the respondent, and the view evidently entertained by the juvenile court, was that the provision in sec. 48.01 (5) (b) continuing for the purposes of the chapter the jurisdiction of the juvenile court until the delinquent attained the age of twenty-one years, must be considered to have modified the pre-existing law, especially when considered in connection with sec. 48.07 (2a), which provides for a rehearing, and gives the court, upon a rehearing, power to make such disposition of the case as is in the best interests of the child.

After careful consideration, it is the court's conclusion that respondent's contentions with respect to the interpretation of the law cannot be sustained. Secs. 48.15 and 48.16 were re-enacted when the Children's Code was passed, and an examination of the legislative history indicates that the legislature resisted all attempts to modify those sections. While sec. 48.01 (5) (b) appears at first sight to give the juvenile court a continuing jurisdiction, destructive of the powers of the Board of Control detailed in sec. 48.16, an examination of other provisions of the section indicates that such is neither its purpose nor effect. Sec. 48.07 (1) (b) gives to the juvenile court wide powers to select a custodian

for delinquent children, and to fix the term of such commitments, but it has no discretion with respect to the term where the commitment is to the Wisconsin industrial school for girls, and no power to modify its orders with respect to the placing and custody of the child exists in case of such commitments. All commitments to the industrial schools are required by sec. 48.15 to be for the period of minority unless the child is paroled in accordance with sec. 48.16 (2) (b). Sec. 48.07 (1) (b) discloses at least one purpose for extending the jurisdiction of the juvenile court beyond the time of commitment. This purpose is to permit the court to modify such of its commitments as under this subsection it is authorized to modify. A consideration of this subsection discloses that it is wholly consistent with secs. 48.15 and 48.16, that it was carefully drafted to make it so, and that the subsection does not give to the juvenile court jurisdiction to fix the term of a commitment to the Wisconsin industrial school for girls or to modify this commitment.

The next section which requires analysis is sec. 48.07 (2a), which provides in substance for a rehearing upon the discovery of additional evidence raising a question as to the advisability of the commitment. This subsection clearly creates subject matter for the continuing jurisdiction of the juvenile court to operate upon, and the only question is as to the scope of the jurisdiction. It is plain to us that the only power conferred by sec. 48.07 (2a) is to rehear the original case upon evidence which was not produced at the trial, but which bears upon the propriety of the original commitment. It is plain to us that this subsection is not broad enough to vest a juvenile court which has once committed a child to the Wisconsin industrial school for girls with the jurisdiction to consider evidence bearing on the present advisability of discharging or paroling the child from the industrial school, but which presupposes a valid and proper

commitment. In other words, while it is entirely proper for the juvenile court to consider whether it ever should have committed the child to the industrial school, it is wholly without jurisdiction to parole, pardon, or otherwise terminate the commitment by reason of its conclusion that the child has reformed or that there have occurred improvements in its former environment or in the capacity of its parents to control it. Such a construction is not only in accordance with the literal meaning of the subsection, but is the only construction which will give a consistent and sensible meaning to the law as a whole. Sec. 48.07 (2a) also discloses another purpose for continuing the jurisdiction of the juvenile court beyond the time of commitment. It is to permit the court to entertain such rehearings as are authorized by sec. 48.07 (2a). Other purposes for enacting sec. 48.01 (5) (b) not inconsistent with the court's conclusion might be discovered by a detailed examination of the whole chapter, but we deem it unnecessary to labor this point. We are satisfied that neither secs. 48.01 (5) (b), 48.07 (1) (b) nor 48.07 (2a) modify or change the provisions of sec. 48.15 or 48.16.

The next question is whether the State Board of Control has standing to appeal from the order of the juvenile court. As stated in the case of *In re Willard, post,* p. 562, 275 N. W. 541, the State Board of Control must find its right to appeal in sec. 48.07 (8), and may not rely upon the general statutes applicable to appeals. Sec. 48.07 (8) reads as follows:

"In any case where a child is found, determined or adjudged by the juvenile court to be dependent, neglected or delinquent or in case of the transfer of the permanent control, care and custody of a child or the termination of the rights of the parents with reference to such child, appeal may be taken to the circuit court of the same county or if the circuit judge is the judge of the juvenile court, directly to the supreme court. In the case of an appeal to the circuit

court the appellant shall have a new trial which shall be without a jury unless a jury is demanded. Such appeal may be taken within forty days from the date of said finding, determination, or judgment in the manner in which appeals are taken from judgments in civil actions. No undertaking shall be required on such appeal. . . ."

It is the claim of the State Board of Control that an appeal is expressly given in any one of three situations: (1) Where the child is found delinquent; (2) in case of the transfer of permanent control and custody of the child; (3) where there has been a termination of the rights of the parents with reference to the child. The claim of the State Board of Control is under (2), it being asserted that there has been a transfer of the permanent control, care, and custody of the child. Respondent contends that, while the subsection does not state who shall have the right to appeal, it is a fair assumption that sec. 48.07 (8) authorizes an appeal only by the child, or those whose natural right to custody has been terminated or transferred by proceedings in the juvenile court; and that the provision in the subsection that in case of an appeal to the circuit court the appellant shall have a new trial which shall be without jury unless a jury is demanded indicates that it is the delinquent or his parents who are to have a new trial to ascertain the fact of delinquency or the propriety of the change of custody. The subsection is not entirely clear, and the arguments heretofore set forth are not conclusive, although that of the respondent seems more in accordance with the language of the subsection. Another consideration, however, fortifies the conclusion that there was no intention to vest the State Board of Control with a right to appeal, and it is for this reason that some attention has been given to the construction of the statute. It is evident that it was the intent of the subsection to grant appeals solely to review orders within the jurisdiction

of the juvenile court. Neither the chapter nor the subsection contemplates usurpation of powers by the juvenile court, and no appeal is provided in such a situation. The sole question on this appeal to the circuit court would be whether under the facts the juvenile court exceeded its jurisdiction. This is not a matter with reference to which a new trial is appropriate or in which a jury trial could be had if demanded. When this circumstance is considered, together with language which apparently, though not conclusively, shows that the right of appeal is in the child or its parents or guardians, it is evident that an appeal does not lie by the Board of Control in this situation. The proper proceeding in such case is by *certiorari*. It may be added that we see no reason why a proper return to a writ of *habeas corpus* sued out by the child or its parents to enforce such an order of release may not serve to bring before a court the questions sought to be litigated here. If, either in *habeas corpus* or *certiorari* proceedings, it appears that the juvenile court has modified its order of commitment, not because of evidence impeaching its original propriety, but because of its view that the commitment has served its purpose, or that the child is fully reformed, or that the parents are now in a position to give it proper environment or control, its want of jurisdiction to enter the order will be fully established.

*By the Court.*—Order affirmed.